THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS(SBN 144524)
Assistant United States Attorney
Chief, Environmental Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4536
    Facsimile: (213) 534-4300
    Email: joseph.johns@usdoj.gov
DAVID P. KEHOE (Washington State Bar 21348)
Trial Attorney
United States Department of Justice
    Telephone: (202) 305-0382
    Facsimile: (202) 305-0397
    Email: david.kehoe@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 08 -   189-JSL |
| | ) | |
|     Plaintiff, | ) | **PLEA AGREEMENT FOR DEFENDANT** |
| | ) | **PACIFIC OPERATORS,   INC.** |
|     v. | ) | |
| | ) | |
| PACIFIC OPERATORS, INC., | ) | |
| | ) | |
| | ) | |
|     Defendant. | ) | |

The United States of America, by and through the United States
Attorney's Office for the Central District of California, and the
Environmental Crimes Section of the Department of Justice
(collectively referred to herein as "the government"), and the
Defendant, Pacific Operators, Inc. (referred to herein as "the
Defendant"), through its authorized representatives, enter into the
following agreement, pursuant to Rule 11(c)(1)(C) and 11(c)(3) of the
Federal Rules of Criminal Procedure.

1

## WAIVER OF INDICTMENT

2    1.   The Defendant, having been advised of the right to be

3  charged by Indictment, agrees to waive that right and enter a plea of

4  guilty to the charge brought by the government in a felony Information

5  filed in the Central District of California.

6                              THE CHARGES

7    2.   The Defendant, having been advised of the right to have this

8  matter tried before a jury, agrees to waive that right and enter a

9  plea of guilty to a one-count Information in United States v. Pacific

10  Operators Inc., charging Defendant with a violation of Title 43,

11  United States Code, Section 1350(c)(1), for using a natural gas lift

12  line to store and transport such gas in knowing and willful violation

13  of regulations and orders issued by the Department of the Interior

14  ("DOI"), namely, 30 C.F.R. §§ 250.1000(a),  250.1000(e)(1),

15  250.107(a)(2), and 250.1006(b).

16    3.   The Defendant will enter its guilty plea through its counsel

17  of record, authorized by resolution of Defendant's Board of Directors.

18                        NATURE OF THE OFFENSE

19    4.   In order to be guilty of the violation of 43 U.S.C.

20  § 1350(c)(1) charged in Count One, the Defendant, by and through the

21  actions of its agents and/or employees, must have (a) knowingly used

22  the gas lift line to store and transport natural gas; and (b) in

23  knowing and willful violation of regulations and orders issued by the

24  Secretary of the DOI, namely, 30 C.F.R. §§ 250.1000(a),

25  250.1000(e)(1), 250.107(a)(2), and 250.1006(b), that are designed to

26  protect health, safety, and the environment or to conserve natural

27  resources.

28

2

PENALTIES

5.    The statutory maximum sentence that the Court can impose on an organization for each conviction of 43 U.S.C. § 1350(c)(1), is a term of five years probation, pursuant to 18 U.S.C. § 3561(c)(1); a fine of $500,000, pursuant to 18 U.S.C. § 3571(c)(3), or twice the gross pecuniary gain derived from the crimes or twice the gross pecuniary loss caused to the victims of the crime, pursuant to 18 U.S.C. § 3571(d); and a special assessment of $400, pursuant to 18 U.S.C. § 3013(a)(2)(B).

FACTUAL BASIS

6.    The Defendant and the government agree and stipulate to the following statement of facts:

a.    Prior to and during the period between approximately 2000 and 2002, the defendant maintained offices located at 205 East Carrillo Street, #200, Santa Barbara, California. The defendant also operated the La Conchita Oil and Gas Plant located at 7459 West Pacific Coast Highway, La Conchita, California (the "La Conchita Plant") in Ventura County.

b.    The defendant was a private business involved in the off-shore drilling of oil and natural gas on the Outer Continental Shelf (the "OSC"). In that capacity, Defendant operated the drilling Platforms Hogan and Houchin, which were located approximately three and four miles offshore, respectively, from the La Conchita Plant. Natural gas and oil were produced on Platforms Hogan and Houchin and transported via pipelines, including the gas-to-shore-line and the oil-to-shore line, to the La Conchita Plant.

c.    The Defendant maintained a natural gas lift line (hereinafter the "gas lift line") that was approximately 10 inches in

3

diameter and ran from the La Conchita Plant along the ocean floor to Platform Hogan.  The gas lift line then ran back down to the ocean floor and over to Platform Houchin, which is less than one mile from Platform Hogan.  The gas lift line was initially used by Defendant to send pressurized natural gas from the La Conchita Plant to Platforms Hogan and Houchin for injection into existing oil wells in an attempt to increase and maintain oil production.  However, since at least 1997, Defendant stopped using the gas lift line for the purpose of injecting natural gas into the oil wells.

        d.   In 1999, an independent testing company conducted an inspection of the thickness of the walls of the gas lift line.  The testing company reported, among other things, that the thickness of the walls on two areas of the gas lift line had decreased by 80% and 87%, respectively.  According to the industry standard (ASME B31.G), a pipeline is considered unfit for service if its wall thickness has decreased by 80% or more.

        e.   In a letter dated February 10, 2000, the Minerals Management Service ("MMS") notified Defendant that, based on the report of the 1999 inspection showing 80% decreases in wall thickness, the gas lift line was unfit and should not be returned to service without first being repaired.  The letter also stated that Defendant must submit any repair plan for the gas lift line to the MMS for approval.

        f.   On January 4, 2002, an inspector from the MMS inspected Platform Houchin and discovered a "jumper line" or pipe that was 2 inches in diameter, that connected the gas lift line to the gas to

4

shore line on the platform.  The MMS inspector advised employees of the Defendant that if the gas lift line is out of service that the jumper line should not be used and issued a Notification of Incidents of Noncompliance stating that the gas lift line must be equipped with a flow safety valve and a shut down valve.

        g.   On January 14, 2002, the Defendant certified to the MMS that the gas lift line has been closed or "capped off" at Houchin.

        h.   During the period from February 10, 2000, through approximately February 2002, and specifically from approximately January 23, 2002, through January 31, 2002, employees and agents of Defendant knowingly continued to store and transport natural gas in and through the gas lift line through the portions of the gas lift line that could still be accessed after the capping at Houchin. Specifically, gas was stored in the gas lift line during "upsets" or periods when the La Conchita Plant was unable to sell gas to the gas company, such as unplanned events, equipment break downs, or excessive pressure.  During such "upsets," a regulator (or valve) opened and the gas was stored in the gas lift line.  In addition, the Defendant's employees and agents also knowingly pressurized the gas lift line with natural gas into order to "blow out" or push blockages (such as accumulated liquids) in the oil-to-shore-line that transported oil from Platforms Hogan and Houchin to the La Conchita Plant.  Prior to using the gas lift line as described herein-above, the Defendant had not repaired said line as required by MMS in its letter dated February 10, 2000.

## WAIVER OF CONSTITUTIONAL RIGHTS

7.    By pleading guilty, Defendant gives up the following rights:

    a.    The right to persist in a plea of not guilty.

    b.    The right to a speedy and public trial by jury.

    c.    The right to the assistance of counsel at trial.

    d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove Defendant guilty beyond a reasonable doubt.

    e.    The right to confront and cross-examine witnesses against Defendant.

    f.    The right to call witnesses to testify on Defendant's behalf and to subpoena those witnesses to testify.

By pleading guilty, Defendant also gives up any and all rights to pursue any affirmative defenses, constitutional claims, and other pretrial motions that have been filed or could be filed.

## SENTENCING AGREEMENT

8.    The Defendant understands and acknowledges that, at sentencing, the Court is required to take into account the United States Sentencing Guidelines ("U.S.S.G."), together with the other sentencing goals set forth in Title 18, United States Code, Section 3553(a).   The Defendant understands and acknowledges that the guidelines, including Chapter 8 that provide guidance for the sentencing of corporate Defendants, may be considered by the Court, except that pursuant to U.S.S.G. §§ 8C2.1 and 8C2.10, the guidelines are not applicable in determining the fine for an organization violating statutes relating to the environment.   Instead, the fine is

6

1  to be determined under 18 U.S.C. §§ 3553 and 3571.

2

3      9.    Pursuant to Rule 11(c)(1)(C) of the Federal Rules of

4  Criminal Procedure, the government and the Defendant agree and

5  stipulate that the Defendant will be placed on organization probation

6  for a period of five years pursuant to 18 U.S.C. § 3561(c)(1) and

7  consistent with U.S.S.G. §§ 8D1.1 and 8D1.2, with the following terms

8  and conditions:

9

10      a.   The Defendant is ordered to pay a total fine of Four

11  Hundred-Fifty Thousand Dollars ($450,000) in the form of cashier's

12  checks payable to the "Clerk of the United States District Court."

13  Payments of the fine shall be made as follows: $40,000 on the day of

14  sentencing; $40,000 one year after the day of sentencing; $40,000 two

15  years after the day of sentencing; $40,000 three years after the day

16  of sentencing $40,000 fours after the day of sentencing; and $250,000

17  five years after the day of sentencing.  Pursuant to 18 U.S.C. §

18  3612(f), interest shall accumulate on any unpaid balance of the total

19  fine imposed.

20

21      b.   The Defendant will pay the mandatory special assessment

22  of four hundred dollars ($400) for Count One pursuant to 18 U.S.C.

23  § 3013(a)(1)(B)(iii) in the form of a cashier's check payable to the

24  "Clerk of the United States District Court" on the date of sentencing.

25      c.   The Defendant agrees to abide by and follow any lawful

26  orders issued by any local, state, or federal regulatory agency having

27  jurisdiction over its business facilities, including those issued by

28  the MMS, of the DOI.

7

d.    The Defendant agrees to develop, adopt, implement and fund a comprehensive Environmental Compliance Plan ("ECP") during its term of probation, consistent with sentencing policies set forth in USSG § 8D1.4.  The ECP is set forth as an Attachment to this Plea Agreement.  Any failure to implement the ECP or meet any of the deadlines therein will constitute a violation of probation.

10.    There is no agreement as to Defendant's criminal history or criminal history category.

11.    The parties agree that pursuant to Federal Rules of Criminal Procedure 32(c)(1)(A)(ii), that they will place information in the record enabling the Court to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553 without the Probation Department conducting a pre-sentence investigation, and further agree to jointly recommend that the Court waive the preparation of a pre-sentence report in this matter.  The parties further request that the Court sentence Defendant at the time the guilty plea to the Information is entered and the Court accepts the guilty plea.

### APPLICATION OF AGREEMENT

12.    This Agreement shall bind the Defendant and its successors and assigns.  The Defendant, or its successors-in-interest, if applicable shall provide the government and the Probation Office with immediate notice of any name change, corporate reorganization, sale or purchase of the La Conchita Plant and Platforms Hogan and Houchin, or similar action affecting this Agreement or the ECP.  No change in name, change in corporate or individual control, corporate reorganization, change in ownership, merger, change of legal status,

8

1 | or similar action shall alter Defendant's obligations under this
2 | Agreement. The Defendant shall not engage in any action to seek to
3 | avoid the obligations or conditions of this Agreement.

### NATURE OF THE AGREEMENT

13. The Defendant and the government acknowledge that this agreement is made pursuant to Rule 11(c)(1)(C) and 11(c)(3) of the Federal Rules of Criminal Procedure. If the Court rejects any provision of this Agreement or seeks to impose a sentence other than that recommended by the parties, each party reserves the right to withdraw from this Agreement and the Defendant may with withdraw its guilty plea.

### NON-PROSECUTION OF ADDITIONAL OFFENSES

14. Provided that the Defendant complies fully with the terms of this agreement, the United States agrees to forgo additional criminal prosecution in the Central District of California for any additional environmental offenses or related offenses related to the use of the gas lift line which are known to the government at the time of the signing of this agreement.

Defendant understands and agrees that neither this paragraph nor this Agreement limits the prosecuting authority of any sections or divisions of the Department of Justice, including the United States Attorney of any other judicial district, or any other federal, state or local regulatory or prosecuting authorities. Furthermore, this Agreement does not provide or promise any waiver of any civil or administrative actions, sanctions, or penalties that may apply, including but not limited to: fines, penalties, claims for damages to

natural resources, suspension, debarment, listing to restrict rights and opportunities of the Defendant, to contract with or receive assistance, loans, and benefits from United States agencies, licensing, injunctive relief, or remedial action to comply with any applicable regulatory requirement.  This Agreement has no effect on any proceedings against any party not expressly mentioned herein, including the actual or potential criminal liability of any individuals.

This Agreement does not limit the right of Defendant or the government to speak at the time of sentencing consistent with the provisions set forth in this plea agreement and the Agreed Factual Basis, and to provide the Court with evidence of all relevant conduct committed by Defendant.  The parties agree that at sentencing each will support the agreed disposition set forth in this Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

## DEFENDANT'S OBLIGATIONS

15.  The Defendant agrees:

a.  To plead guilty as set forth in this Agreement.

b.  To abide by all sentencing stipulations contained in this Agreement, including the timely payment of all amounts due as fines and assessments and the completion of the ECP.

c.  To appear as ordered for all court appearances and obey any other ongoing court order in this matter.

d.  Not to commit any crime.

e.  To be truthful at all times with Pretrial Services, the

1   U.S. Probation Office, and the Court.

2          f.   To pay the applicable special assessment at or before

3   the time of sentencing.

4                    THE GOVERNMENT'S OBLIGATIONS

5      16.  If Defendant complies fully with all Defendant's obligations

6   under this Agreement, the Government agrees to abide by all sentencing

7   stipulations contained in this Agreement.

8                    BREACH OF THE AGREEMENT

9

10     17.  The Defendant, through its authorized representatives

11  recognizes that the government has agreed not to prosecute all of the

12  criminal conduct the government believes is established by the

13  evidence as committed by the Defendant solely because of the promises

14  made by the Defendant in this Agreement.  If the Defendant breaches

15  this Agreement, or if the Defendant withdraws its guilty plea pursuant

16  to paragraph 13 of this Agreement, the government retains the right to

17  present to the Grand Jury for Indictment, all of the criminal

18  violations the government believes are established by the evidence.

19  If the actions of the Defendant or any of its agents and/or employees

20  breaches this Agreement, the Defendant will not be able to withdraw

21  its guilty plea, and the government will be relieved of all of its

22  obligations under this Agreement.  If, as a result of a breach of the

23  Agreement, the government elects to pursue any charge that was not

24  filed as a result of this Agreement, Defendant expressly waives all

25  defenses based upon the statute of limitations, pre-indictment delay,

26  except to the extent that such defenses existed as of the date of the

27  signing of this Agreement and subject to paragraph 21 below.

28

                              11

## CORPORATE AUTHORIZATION

18.   The Defendant agrees that it is authorized to enter into this Agreement.  At the time of signing by Defendant's representatives, Defendant shall provide the government with a written statement in the form of a corporate resolution certifying that Defendant is authorized to enter into and comply with all of the terms of this Agreement.  The corporate resolution shall certify that Defendant's Board of Directors has authorized the undersigned representatives to take these actions and that all corporate formalities for such authorizations have been observed.  The Defendant agrees that the plea of guilty will be entered by the Defendant through its counsel on the Defendant's behalf.  By entering this guilty plea, the Defendant hereby waives all objections to the form of the charging documents, admits that it is in fact guilty of the offense as set forth in the Information, and that the Factual Statement set forth as an Addendum to this Agreement is a true and accurate statement of the Defendant's criminal conduct and that it provides a sufficient basis for the Defendant's plea of guilty to the offense charged in the Information.

## WAIVER OF APPEAL.

19.   The Defendant, through its authorized representatives, is aware that 18 U.S.C. § 3742 gives the right to appeal the sentence to be imposed, and that other federal statutes give a Defendant the right to appeal other aspects of the conviction.  In consideration of the Agreement with the United States as set forth herein, Defendant knowingly and voluntarily agrees to waive the following rights:

a.    The right, conferred by 18 U.S.C. § 3742, to appeal the
sentence imposed by the Court for the conviction of these offenses,
including restitution and community service;

b.    The right to appeal any aspect of Defendants'
conviction, including any pre-charge or pre-trial dispositions of
motions or other issues; and

c.    The right to bring any collateral attack against
Defendant's conviction or sentence, except as it may relate to the
effectiveness of legal representation.

### VOLUNTARINESS OF THE PLEA.

20.   The Defendant, through its authorized representatives,
acknowledges that it has entered into this Agreement freely and
voluntarily and that they have been fully advised by counsel, and that
no threats or promises were made to induce it enter into the guilty
pleas called for by this Agreement.

### STATUTE OF LIMITATIONS

21.   In the event that this Agreement is not accepted by the
Court for any reason, or Defendant has breached any of the terms of
this Agreement, the statute of limitations shall be deemed to have
been tolled from the date of the Agreement to:  (1) 60 days following
the date of non-acceptance of the Agreement by the Court; or (2) 60
days following the date on which a breach of the Agreement by
Defendant is discovered by the government.

### COMPLETENESS OF AGREEEMENT

22.   The government and Defendant acknowledge that these terms
constitute the entire Agreement between the parties. This Agreement is

13

1  effective upon signature by Defendant and all of the attorneys for the

2  government.

3      This Agreement is effective upon signature by Defendant's

4  authorized representative and its counsel and an Assistant United

5  States Attorney.

6  AGREED AND ACCEPTED

7
8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA

9  THOMAS P. O'BRIEN
   United States Attorney
10

11  _____          2/25/08
                                       _____
12  JOSEPH O. JOHNS                    Date
   Assistant United States Attorney

13

14
   RONALD J. TENPAS
15  Assistant Attorney General
   Environmental and Natural Resources Division
16  United States Department of Justice

17

18  _____          2/25/08
                                       _____
19  DAVID P. KEHOE                     Date
   Trial Attorney
20  United States Department of
   Justice
21  ( SIGNED BY AUSA Johns PURSUANT TO )
22  ( AUTHORIZATION GRANTED BY D.P.K. )

23

24

25

26

27

28

                         14

1  As an authorized representative of Defendant Pacific Operators,

2  Inc. ("Defendant"), I have read this Agreement and carefully discussed

3  every part of it with Defendant's attorney.  I understand the terms of

4  this Agreement, and I voluntarily agree to those terms.  The

5  Defendant's attorney has advised me of its rights, of possible

6  defenses, of the Sentencing Guideline provisions, and of the

7  consequences of entering into this Agreement.  No promises or

8  inducements have been made to me or Defendant other than those

9  contained in this Agreement.  No one has threatened or forced me or

10  Defendant in any way to enter into this Agreement.  Finally, I am

11  satisfied with the representation provided by Defendant's attorney in

12  this matter.

13

14

15  _____       1/2/08
    Authorized Representative              Date
16  of Pacific Operators Inc.
    Defendant

17  I am Defendant's attorney.  I have carefully discussed every part

18  of this Agreement with the authorized representatives of Defendant.

19  Further, I have fully advised the authorized representative of

20  Defendant's rights, of possible defenses, of the Sentencing

21  Guidelines' provisions, and of the consequences of entering into this

22  Agreement.  To my knowledge, the decision of Defendant and its

23  authorized representatives to enter into this Agreement is an informed

24  and voluntary one.

25

26  _____       1/2/08
                                           Date
27  JOHN VANDEVELDE
    Counsel for Defendant
28  Pacific Operators, Inc.

15

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR __- _____ |
| | ) | |
| Plaintiff, | ) | I N F O R M A T I O N |
| | ) | |
| v. | ) | [43 U.S.C. § 1350(c)(1)]: |
| | ) | Violation of Orders and |
| PACIFIC OPERATORS, INC, | ) | Regulations Issued by the |
| | | Secretary of the Interior |
| Defendant. | | |

The United States Attorney Charges That:

### COUNT ONE

[43 U.S.C. § 1350(c)(1)]

1.   The Outer Continental Shelf Lands Act("OCSLA") was enacted to ensure that the operations involving the exploration, development, and production of oil, natural gas, and other resources in the Outer Continental Shelf be conducted in a safe manner that prevents or minimizes occurrences which may cause damage to the environment or to property or endanger life or health.   43 U.S.C. § 1332.

2.   Federal regulations enacted pursuant to OCSLA require that pipelines and associated valves, flanges, and fittings be designed, installed, operated, maintained, and abandoned to provide safe and pollution-free transportation of fluids in a manner which does not unduly interfere with other uses in the Outer Continental Shelf.   30 C.F.R. §§ 250.1000(a).

3.    OCSLA prohibits any person from knowingly and willfully violating any order issued or regulation promulgated pursuant to OCSLA designed to protect health, safety, or the environment or conserve natural resources.  43 U.S.C. § 1350(c)(1).

4.    On or about January 23, 2002, through January 31, 2002, in Ventura County, within the Central District of California, Defendant PACIFIC OPERATORS, INC., by and through the actions of its agents and employees, who were acting within the scope of their duties, did knowingly use the gas lift line in knowing and willful violation of orders and regulations issued by the Secretary of the Department of the Interior, namely 30 C.F.R. §§ 250.1000(a) and 250.1006(b), that are designed to protect health, safety, and the environment or to conserve natural resources.

All in violation of 43 U.S.C. § 1350(c)(1).

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Chief, Criminal Division

JOSEPH O. JOHNS
Chief, Major Fraud and
Environmental Crimes
Section

DAVID P. KEHOE
Trial Attorney
United States Department
of Justice

2

**ATTACHMENT**
**ENVIRONMENTAL COMPLIANCE PLAN**
**PACIFIC OPERATORS, INC.**

The following standards and requirements for an Environmental Compliance Plan ("ECP") have been prepared pursuant to the Plea Agreement between the United States ("the government") and the defendant, Pacific Operators, Inc. ("Defendant") and are a condition of probation. The purpose of this ECP is to ensure that pipeline operations comply with all applicable federal, state, and local laws and regulations including, but not limited to, those promulgated pursuant to the Outer Continental Shelf Lands Act ("OCSLA") , 43 U.S.C. Sections 1331, et. seq.

This ECP does not in any way diminish, change, modify, or replace the requirements set forth in local, state, or federal laws, regulations, or rules. Further, this ECP shall in no way modify or interfere with the existing authority of the Minerals Management Service ("MMS") to administer and enforce its regulatory authority over the defendant pursuant to OCSLA. In the case of a conflict between this ECP and any local, state, or federal laws, regulations or rules, such that the ECP is less restrictive, then the more restrictive authority shall govern.

This ECP shall be incorporated into the Plea Agreement by reference and compliance with its terms shall be a condition of probation. Failure to comply with any terms of the ECP may be a basis on which the government may move to revoke or modify the Defendant's probation. In the event that the United States Probation Office or the government seeks to revoke or modify Defendant's probation, Defendant shall have all the rights afforded to it to contest such modification or revocation.

## Pipelines

1.     All access points to the Gas Lift Pipeline shall be completely removed or blind flanged and sealed. All seals must be tracked by Defendant. Nothing in this ECP or the related Plea Agreement shall be construed to prevent the placing of the Gas Lift Line back in service for its original purpose or any other purpose, so long as all regulatory and other requirements for doing so are satisfied.

2.     All onshore and offshore valves associated with out-of-service pipelines ("pipelines" as used herein refers to regulated hydrocarbon pipelines) must have MMS numbered seals and MMS must be informed if the seal is broken or tampered with. All seals must be tracked by Defendant.

3.     Defendant shall immediately report to the MMS any pipeline taken out of service.

4.     Only personnel qualified pursuant to U.S. Department of Transportation (DOT) requirements may work on Defendant's pipelines, including pipelines under U.S. Department of the Interior jurisdiction. Defendant must provide to the MMS the names and titles of employees, including contract personnel, who are properly trained to act as

1

DOT-qualified pipeline personnel. Since MMS does not have specific regulations regarding qualified pipeline personnel and training, DOT regulations will apply for purposes of this Environmental Compliance Plan. Regulations regarding Qualification of Pipeline Personnel can be found at 49 CFR 192 Subpart N and 49 CFR 195 Subpart G.

5.      Defendant shall take immediate corrective action and shut in any pipeline if continued activity would threaten or result in serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), property, mineral deposits, or the marine, coastal, or human environment. This requirement goes beyond the 30 CFR 250.1000(e)(1) regulation, wherein MMS may suspend pipeline operations if MMS makes such a determination concerning the potential harm or damage.

6.      Defendant shall require any company that conducts an internal inspection (i.e., smart pigging) and other pipeline integrity work on its pipelines to submit copies of the findings directly to MMS within 60 days of completion of inspection. However, if conditions are observed during any inspection to be detrimentally affecting a pipeline, a plan of corrective action must be submitted to the MMS within 30 days of the observation, per 30 CFR 250.1008(g). Pipeline integrity work includes, but is not limited to, coupon data and ultrasonic testing. This includes the onshore portions of offshore pipelines.

## Platform Maintenance

7.      The Defendant's "Reinstating of the Systematic Cleaning & Painting Program," as addressed in the MMS's letter to Defendant dated November 8, 2007, shall be completed in its entirety as soon as practical, but no later than December 1, 2008, as identified in Defendant's letter of response and matrices for Platforms Houchin and Hogan dated November 30, 2007.

8.      Those items listed as required repairs/maintenance in the Thomas & Beers API Level I Structural Inspection for Hogan (dated November 9, 2007) and Houchin (dated November 12, 2007) transmitted to MMS by letter and stamped received on November 28, 2007, shall be completed no later than January 1, 2009 (unless otherwise covered by paragraph 7 above). Specifically, the items are as follows:

a)      Platform Hogan

1)      Pipe Rack Deck - The chain handrail on the west side of the pipe rack is very light as shown in Photo 15 and there is an opening in the handrail as shown in Photo 16. Monitor the adequacy of the safety handrail chains for OSHA compliance and safety.

2)      Pipe Rack Deck - On the SE edge at stairs, install a top guardrail/handrail for adequate fall protection per OSHA 942nd minimum height of handrail). (Photo 20)

2

3)      Pipe Rack Deck - There is a bent column supporting the mud dock. These columns appear to be inadequate for buckling and heavy loads. This structure should be addressed for structural use and design. In the near term, you should post a warning sign to limit the mud dock loads to light loads only.

4)      Lower South Stairs - From the production deck to the +14 deck, replace the bad tread on the lower portion and the poor handrail at the mid landing. (Photos 58, 73, 74, 80)

5)      Lower North Stairs - From the production deck to the +14, lower treads need to be inspected and replaced as required. The upper treads appear to be in fair condition.

b)      Platform Houchin

1)      Heliport Deck - The heliport netting frame is corroding and requires maintenance. (Photos 108-112)

2)      Heliport Deck - The heliport safety net is bowed and the frame is pitted. Repair and replace netting as needed and tighten netting all the way around. Use tension bars and bolts at end of netting and fully secure the sides of the netting to the frame. (Photos 108-112)

3)      Pipe Rack Deck - The chain handrail on the west side of the pipe rack is very light, and some sections are missing. Monitor the adequacy of the safety handrail chains for OSHA compliance and safety. (Photos 123, 125, 129)

4) Mud Dock - Mud dock design is very light. Monitor loads through out the year to prevent overload (Photos 135, 119)

6)      South Crane Pedestal - Clean, repair as needed, and point the pedestal below the drill deck, including the corroded area by the man-door. (Photos 160, 161)

7)      Well-Bay Stairs - The stairs from the well-bay grating to the production deck on the south side need to be refurbished including new stair treads. (Photo 181)

## Wildlife and Fisheries Training

9.      Defendant shall work cooperatively with MMS to develop and produce an up-to-date Wildlife and Fisheries training program that describes the wildlife and fish resources and fisheries in the area and the potential risk to these resources from offshore oil and gas activities. Defendant must guarantee that the training program satisfies the needs of MMS and other applicable State and Federal agencies. Defendant may hire a contractor to assist in this effort if it ensures that the contractor or agent works cooperatively with

3

MMS to guarantee that the training program satisfies the need of MMS and other applicable State and Federal agencies. This training program may be presented using PowerPoint or video/DVD formats and shall be prepared within 90 days after the date of the settlement incorporating this Environmental Compliance Plan and submitted to MMS for approval. Defendant and its contractor(s) or agent(s) shall work cooperatively to revise this training program to address MMS comments and produce a final program within 60 days of receiving MMS's comments. This training program shall be given to Defendant's current employees and contractors within 30 days of being finalized and shall be shown to all new employees and contractors within 30 days of them starting work for Defendant. At MMS's request, this program shall be made available and distributed to all other operators in the Pacific OCS Region.

## Penalties Training

10.    Defendant shall have training that includes the Remedies and Penalties Section (excerpted below) of the Outer Continental Shelf Lands Act, as amended, specifically 43 U.S.C. 1350 (b) and (c), with emphasis on (c): knowing and willful violations. The training shall include the potential penalties an employee may be personally held accountable for if found to be engaging in knowing and willful violations (up to 10 years imprisonment and up to $100,000 per day per violation). The MMS's updated civil penalty fine schedule (up to $35,000 per day per violation) shall also be covered. Training shall be given to current employees, contractors and any new employees. The trainee and trainer must sign a form that the training was completed and the trainee understands the material.    The training shall explain why they are required to take the training and include contact information for reporting a violation. The trainee shall receive a copy of the material. There shall be refresher training every two years. The MMS shall review and concur with the training materials before the training is conducted. The training shall be conducted within 90 days after the date of the settlement incorporating this Environmental Compliance Plan.

[43 U.S.C.]

SEC. 24. REMEDIES AND PENALTIES.—(a) At the request of the Secretary, the Secretary of the Army, or the Secretary of the Department in which the Coast Guard is operating, the Attorney General or a United States attorney shall institute a civil action in the district court of the United States for the district in which the affected operation is located for a temporary restraining order, injunction, or other appropriate remedy to enforce any provision of this Act, any regulation or order issued under this Act, or any term of a lease, license, or permit issued pursuant to this Act.

(b)(1) Except as provided in paragraph (2), if any person fails to comply with any provision of this Act, or any term of a lease, or permit issued pursuant to this Act, or any regulation or order issued under this Act, after notice of such failure and expiration of any reasonable period allowed for corrective action, such person shall be liable for a civil penalty of not more than $20,000 for each day of the continuance of such failure. The Secretary may assess, collect, and compromise any such penalty. No penalty shall be assessed until the person charged with a violation has been given an opportunity for a hearing. The Secretary shall, by regulation at least every 3 years, adjust the penalty specified in this paragraph to reflect any increases in the Consumer Price Index (all items, United States city average) as prepared by the Department of Labor.

4

(2) If a failure described in paragraph (1) constitutes or constituted a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), property, any mineral deposit, or the marine, coastal, or human environment, a civil penalty may be assessed without regard to the requirement of expiration of a period allowed for corrective action.

(c) Any person who knowingly and willfully (1) violates any provision of this Act, any term of a lease, license, or permit issued pursuant to this Act, or any regulations or order issued under the authority of this Act designed to protect health, safety, or the environment or conserve natural resources, (2) makes any false statement, representation, or certification in any application, record, report, or other document filed or required to be maintained under this Act, (3) falsifies, tampers with, or renders inaccurate any monitoring device or method of record required to be maintained under this Act, or (4) reveals any data or information required to be kept confidential by this Act shall, upon conviction, be punished by a fine of not more than $100,000, or by imprisonment for not more than ten years, or both. Each day that a violation under clause (1) of this subsection continues, or each day that any monitoring devise or data recorder remains inoperative or inaccurate because of any activity described in clause (3) of this subsection, shall constitute a separate violation.